Good morning, your honors. Good morning. May it please the court. My name is Rob Wagner. I'm with the Federal Public Defender's Office here in Richmond, and I represent Mr. Johnson in this appeal. The district court erred in imposing the sadistic and masochistic four-level sentencing enhancement for conduct that no other court has characterized as sadistic or masochistic and in imposing $78,000 of restitution for mental health treatment that the victim may never use. The court relied on speculation and set the bar far too low in granting the government's requests to apply both sentencing sanctions. This court must engage in line drawing to distinguish between conduct and factors that qualify for sentencing sanctions and those that do not. Mr. Johnson asks this court to reverse the district court and remand this case for resentencing. So the two issues that are before this court are, first, whether the evidence in this case justifies a four-level enhancement for sadistic and masochistic conduct under Sentencing Guideline 2G2.1B4, and secondly, whether restitution for mental health treatment was improperly ordered by the district court. The first issue, the four-level enhancement for sadistic and masochistic conduct. The imposition of this particular guideline provision took Mr. Johnson's guideline range from 210 to 262 months under Level 37, all the way up to 324 to 405 months, Level 41. At the midpoint of both of these guideline ranges, there's a difference of a 10-year sentence between what was imposed in this case and the guidelines had this enhancement not been granted. 2G2.1B4 states that the court should imply the enhancement, quote, if the offense involved material that portrays sadistic or masochistic conduct or other depictions of violence. District court applied this enhancement based on two arguments that were advanced by the government. First, that the produced images themselves represented sadistic or masochistic conduct. And second, that the possession of the sadistic and masochistic materials, just the possession, was sufficiently intertwined with the production of child pornography that the four-level enhancement applied. And the district court engaged in an analysis under the Otters case from the Sixth Circuit of a six-factor test. For the first argument, that the produced images are themselves sadistic or masochistic, this is a case of first impression. No other court has addressed the specific issues as it relates to simulated intercourse with a pubescent child and an adult male resulting in a sadistic and masochistic enhancement. There is a significant – Have you found another case with facts like this? I'm sorry? Have you found another case with facts like this? I have not, Judge. No. Just that – It's telling us continually that this is a new thing, perhaps reflects the facts of this case. Perhaps it does, but I think the court should be looking to the severity of what's depicted in these images as opposed to what other courts have looked at in applying this enhancement, Your Honor. But if they never had anything like this, the other courts, then we're comparing apples and oranges. Well, that may be true to an extent, Judge, but all the cases the government cited involved situations where there was full and actual penetration of a young child by an adult male. And we simply don't have that here. We have no evidence of penetration? Oh, no, no. There was minimal penetration, but not – How much is enough? Full penetration. How much is – I would suggest that what is enough under the definition of sadistic is that which would cause pain to the child. How old was this child? This child, it was 5 years old at the time of the initial – Would it be reasonable for a district court to find that any level of penetration would cause pain to a child, an adult penetrating a 5-year-old? I would suggest not. If it's merely the labia of the small child and no actual force – The district court doesn't rely on any child. I'm sorry? The district court looked at the film here. Yes, Your Honor. And thought the child looked like the child was uncomfortable. I think – That's – you know, the district court is the decision-maker here. Yes, Your Honor. Yes, Your Honor. We don't have the film here. And I think there's a difference between the grimace that was reflected in the district court's findings as opposed to the pain that other courts have looked to for determining whether it is a sadistic act. There's simply no indication from the record of any intent of the actor to inflict pain and of significant pain, and maybe a grimace, but significant pain by the victim in this case. And that's really the takeaway from just about every case that has identified and described and defined what a sadistic act is, that it produces pain, and that looking to the Burgess case from this court at 454, this court used the language, quote, would necessarily cause physical pain to the victim. The Reardon case, the Reardon case identified and defined sadistic act as the infliction of pain upon a love object as a means of obtaining sexual release. Excessive cruelty. Viewing this image, the images in this case, the videos in this case, the court could not find that there was excessive cruelty here. The district court used as a definition of sadism, of a sadistic act as, quote, deriving pleasure from the infliction of pain, suffering, and humiliation on others. And I would suggest that nothing about these produced images depicts the defendant inflicting pain, suffering, or humiliation. The vibrator. Go back to the video that we were talking about a few minutes ago. Yes. If there was penetration there, would you then concede that the enhancement was correct? If there was full penetration, based on the cases that have construed. The cases make the distinction, and they say it has to be full penetration. No. There's no distinction made in those cases. You're making that distinction. I am, Judge. And I think it's an important distinction to make. When you consider the images that those courts looked at when making the finding of sadistic conduct there, the images appear to be, and from the descriptions in the cases, full penetration. How do you get to a conclusion, though, that that's intended to be a floor in terms of the sufficiency of the evidence? A floor? I'm not sure I understand your question. You're suggesting that only full penetration is sufficient, but the fact of the matter was that those cases involved full penetration. Right. Presumably. But that doesn't mean that that's an absolute requirement. Oh, I agree, Judge. This court must engage in that line drawing. Okay. So where is the line to be drawn? Whether or not the conducted issue necessarily would inflict pain. I think that is what the court should use as its guide in this case, that full penetration by an adult male of a young child certainly would necessarily inflict pain. Simulated intercourse would not necessarily inflict pain. And that's where I would ask this court to draw that distinction, to draw that line between what is sadistic and what is not. And you use the, and I've got to say this, rather offensive term, although, you know, I respect your advocacy.  I respect your advocacy, too. But merely the mere labia comment really was one I wish you hadn't used. Because this idea that on this record, as Judge Diaz was suggesting, that somehow there's a floor for some, I don't know, I understand that, Judge. I mean, every case has to be decided on its facts. Right. And the victim in this case is truly, truly a victim, a long-suffering victim. Yes. And, Your Honor, and the defendant clearly accepted responsibility for that. When he was first confronted by the FBI in this case, he came clean with everything. And he came forward to the court. He pled guilty. He accepted the punishment in this case. His allocution to the court was very heartfelt. Well, he hasn't accepted the punishment. And I said he hasn't accepted the punishment. He's authorized you to come here before the three of us and seek a preliminary ruling to send this back to see what the district court does a second time. Now, there's every reason to think that the district court would do exactly the same thing. Maybe she won't. Maybe she will. But the point is, and, again, don't get me wrong. I'm not saying he didn't accept responsibility in the context of the federal sentencing guidelines. Yes, he accepted responsibility. But the fact of the matter is he thinks he got too long a sentence. Judge, we're here to ask the court to draw certain lines in conduct here. And for that legal distinction, asking the court to make that legal distinction, I don't think in any way reflects on the defendant's acceptance of responsibility. He accepts full responsibility for what he did. We're asking the court to interpret. He wouldn't be here without his authorization. And I don't fault him. Yes. I don't fault him for wanting a shorter sentence. I'm not making a moral judgment about him in saying that. I really am not. But, I mean, if you're going to make an argument that he's accepted full responsibility, you know, that doesn't resonate. I would just take exception to that, Judge. He doesn't want a 30-year sentence. No, no. And I don't fault him for feeling that way. I don't. I really don't. As a matter of law, as a matter of morality, I don't fault him. But you're here. And we think that a sentence of 20 years is more appropriate than a sentence of 30 years. He thinks the conduct in which he engaged does not equate to a 30-year sentence. That's what he thinks. That's our position, Judge. And if the guidelines. It's not. It's his position. It is, Judge. And I am the advocate for that position. And I firmly believe that the lines to be drawn when it comes to this particular enhancement and the definition of sadistic conduct, the bar should be much lower. Excuse me, much higher than what the district court found in this case. And, Your Honor, I did make the comment about the lab. That was a comment that the district court made. That was a factual finding that the district court made. And I feel compelled to use that finding in order to make. I don't recall the district court saying merely the lab. No, no, no. Okay. But talked about that level of penetration, Judge. So I use that. So without conduct that necessarily involves the infliction of pain, I don't believe that this enhancement should be imposed. But there's also a second issue under the enhancement, the four-level enhancement, whether there was the nexus, the necessary nexus between the possessed materials and the materials that were produced. And the district court found under the Adder's test that this was, in fact, satisfied, that there was a sufficient nexus drawn. But what's interesting is that the district court found that the nexus wasn't established for purposes of distribution. It found that the factors were sufficient for purposes of production. And if you look at that test, judges, and if you look how that test was applied, the district court relied far too much on speculation rather than what the facts actually were in the record, in the images themselves. And so based on that finding by the district court of the nexus between the produced images and the possessed images, we feel that the district court acted erroneously and this court should overrule the findings of that court. Turning to the issue of restitution, there was insufficient indicia of reliability and no reasonable certainty of the damage in this case based on the evidence submitted to the court, a letter from a guardian ad litem to a prosecutor to support an award of restitution of $78,000 for mental health treatment of the victim in this case. The consulted professional in this case had never seen the victim, never treated the victim, never evaluated the victim in this case. Did you ask for a restitution hearing? I'm sorry? Did you ask for a hearing? I did not ask for a hearing, Judge. I knew what the government had presented to the court for purposes of – Did you present some contrary – Oh, no. We're not asking the court – we're not saying that under the appropriate circumstances mental health treatment may be appropriate for this child. We're not saying that, Judge. What we are saying is that the level of proof that was adduced by the court, that was presented by the government simply failed to meet that reasonable certainty, threshold finding that a court needs to make in order to order restitution. And in this case it wasn't maybe – no one, no professional, no specialist, no one evaluated the victim in this case. In virtually every case that the government has cited on this issue, the victim, the child, was evaluated by a professional. Again, this involves line drawing. And in this case, the court fell far short of the bar required to impose $78,000 of restitution in this case. The government in their brief relies on the Singletary case for the notion of sufficient reliability, relies on the Amon case, a Fourth Circuit unpublished decision, for the statement that the victim is not required to participate in the proceedings. And we agree, Your Honor, the victim is not required to participate. But the next statement in that Amon case was that the government, not the victim, bears the burden of proving that a victim is entitled to restitution and the amount of restitution. And in this case, the government did not satisfy that burden, did not present evidence nearly sufficient to demonstrate that $78,000 of mental health treatment was required. Are there no further questions? Thank you. Good afternoon. May it please the Court. My name is Tommy Johnstone on behalf of the United States. The District Court, in applying the sentencing enhancement for sadistic and masochistic material or other depictions of violence, did not abuse its discretion in applying that enhancement. It also did not abuse its discretion in ordering that the defendant pay $78,000 to the victim. In starting with the sentencing enhancement, the Court had two paths that it could take to apply the sentencing enhancement. And it conducted extensive analyses under both paths. Starting with the issue of whether or not the defendant produced depictions of violence that were inherently sadistic, the Court made several significant factual findings after, to its credit, reviewing this 45-minute video that the defendant produced. And those findings included that the defendant actually penetrated the victim with an inanimate object beyond the labia, that the victim penetrated herself with an inanimate object beyond the labia, that she, in doing this, when this happened, that she pursed her lips as if in pain. The District Court also described a scene where the defendant grabbed the victim's neck and lifted her off the bed during one incident of sexual molestation. The District Court also found that during these instances of molestation, the victim had to steel herself in anticipation of penetration, that she looked uncomfortable, that she looked unhappy, and that she looked grimacing. So, contrary to what the defendant is saying, we are not dealing merely with simulated penetration. We are dealing with actual penetration of a 5-year-old female. And when the District Court made those findings, it looked at the case law from numerous other circuits. All of which have said that the penetration of a young child by an adult male or by an inanimate object qualifies as violent and inherently sadistic so as to justify the application of this enhancement. And following those decisions, the District Court properly applied this enhancement to this case. I would point out that the cases to Judge Diaz's question, most of the cases do say penetration. But I would point the Court to the Lichtman case out of the Fifth Circuit, which specifically dealt with partial penetration. And in that case, the Court said, it doesn't take a medical degree to determine that a child who has been partially penetrated, a young child, is going to experience physical and emotional pain or both. And that's what we have in this case. I would also point to the case the defendant relies on out of the Sixth Circuit, the Corp case, C-O-R-P. And in that case, the holding with respect to this enhancement says that if the trier of fact determines, beyond a preponderance of the evidence, that an image depicts a sexual act involving a minor that an objective viewer would believe would cause physical pain, emotional suffering, or humiliation to that minor, then this application is applicable. And I would say based on this 45-minute video that the defendant produced with the victim, we have all three of those qualifications met. And so the District Court was proper and made the correct decision, and it certainly didn't abuse its discretion in applying that enhancement to the video. I have to say, frankly, if ever there was a case in which I would have hoped the government went beyond the guidelines and argued the way we used to in the old days when assistant U.S. attorneys actually had to argue for something, and I say that with all respect, did you make an effort to get the judge to make alternative findings here beyond the issue of the guidelines? I understand the importance of getting a within-guidelines sentence and the presumption of reasonableness on appeal. Your Honor, obviously the District Court had several hearings related to these enhancements. Of course. Oh, the judge worked just so hard on this case. And then we had sentencing. After the second sentencing hearing, the judge ordered supplemental briefing. Right. In my supplemental brief, I did include an alternative argument saying if the judge, if the District Court doesn't believe this enhancement would apply, the government would be arguing for an upward variance based on the conduct itself, the totality of the child pornography that was possessed. But that never came up in open court at the time of the action. Correct. It never came up because of the way the District Court ruled. Okay. But I did put that in my supplemental brief in anticipation of that happening, because the defendant did possess, he admitted to possessing five terabytes of child pornography. I understand. But there was never an opportunity to argue that because of the District Court's ruling. Okay. Fair enough. But based on the District Court's findings, I think that the application of this enhancement is appropriate. And, by the way, I don't mean to go outside the record, but what, if anything, did the state prosecutor say about this? If you can say. I can, yes, Your Honor. And, actually, it just happened a couple of weeks ago. They dismissed it? No, the state did pursue the hands-on offenses against the victim. Oh, it did? And the defendant pled guilty to those offenses. Okay. He's not been sentenced. I believe he's being sentenced in January, Your Honor. Okay. Thank you. But the state did pursue that. Thank you. So the second path that the District Court could have taken, and which it said that it could have taken to apply this enhancement, related to the defendant's possession of sadistic or masochistic child pornography within his collection. And the government showed in this case that that possession occurred before, during,  the dates of the offense, while a tad murky, just based on the evidence. But by the defendant's own admission, he molested the victim between when she turned five years old until about a year before he was arrested. So that time frame would have been January of 2012 to early 2014. So by his own admission, that's what we're talking about. Before that time period, he was possessing sadistic and masochistic material depicting children. He also did it during, and he kept on to that material until we arrested him. Based on that, as well as the factors in the Otters case from the Second Circuit, the District Court said that the possession of this material was sufficiently related to the conduct, and the District Court was proper in that. The possession of this material had temporal proximity to the offense of conviction. The conduct depicted in the child pornography collection was similar to what the defendant was doing with the victim. The entire child pornography collection was stored on the same device and easily accessible. The District Court found that, made a specific factual finding, that the defendant took child pornography from his collection and showed it to the victim, which is depicted in the video as a model or as a grooming technique. The similarity in content also goes to the issue of the defendant using his child pornography collection as a guide to what he wants to do to the victim, and that's depicted in both types of material. And then finally, that the defendant was sexually aroused by the child pornography that he was collecting. And I would submit that anyone who collects five terabytes of anything has an interest in that material, and certainly the defendant was aroused and had a serious interest in child pornography in this case. So that was the second path that the Court could take to apply this enhancement. And just finally, Your Honor, just going to the restitution issue, I would just point out that restitution is not required to be proven to mathematical precision. The government has to present a finding or a number that is reasonably certain that the District Court can look at and say, yes, that number has sufficient indicia of reliability. Obviously, in this case, the victim qualifies as a victim under the statute, and I don't think that her physical or emotional harm is at question. I don't think it's disputed. The question is on the number. And this Court has ruled the defendant is under no obligation, when restitution is mandatory, as it is in this case, to participate in the restitution process. And precisely for that reason, the government had a concern that given the victim's family situation, given her age, given her new living requirements, that she would not be able to participate in the restitution process, in the sense that she wouldn't be able to reach out and get the counseling that she needed. So the government moved for a guardian ad litem in this case, and the Court appointed that. And the guardian ad litem, as the victim's representative reached out to several therapists with expertise in this area, who all said that the victim needed immediate treatment based on what had happened to her. And the guardian ad litem went a further step and identified a specific therapist with the qualified or with the proper qualifications who agreed to take this victim as a patient. And that therapist said that one session a week until the victim turns 18 would be appropriate, and it would be $150 a week. That's the government's evidence in this case, but that is a reasonably certain amount that it will cost the victim to deal with what is admittedly the significant and extensive harm that she's suffered based on the defendant's conduct. And so I'd ask the Court to uphold the restitution order as well. If there are no further questions, I'll sit down. Thank you. Thank you very much. Thank you. Just to follow up on the question about the state court proceedings very briefly, Judge, the defendant pled guilty in the state court to rape, and he pled guilty with the understanding that the time he receives in the state court will run consecutive to the time imposed in the federal court. So in terms of accepting responsibility, that's a further indication of his acceptance of responsibility. As far as the nexus drawn between the material that was produced and the material that was possessed, I think it's important to look at the percentage amongst his very vast collection of child pornography, but the percentage of which was sadistic and masochistic. And I believe if you look at the images themselves, the still images, it was maybe 0.5 percent, the videos maybe 2.5 percent, to suggest that he was showing the victim or that he was viewing before his engagement with the victim S&M materials I think is a step too far, and a step too far as far as speculation goes on behalf of the Court. And as to restitution, at the time the restitution order was imposed in this case, it had been at least two years since the acts themselves, since these images were produced, and there was no indication of any mental health treatment that the child had received. We are now a year beyond that, and there's still no indication that any mental health treatment has been received. If there are no further questions. Has the money been paid? I'm sorry? Oh, certainly not, Your Honor. Certainly not. That might be why there hasn't been any mental health treatment. Well, it would seem to me if the child needed it that there would be ways to provide that treatment to the child, or at least there would be efforts to obtain the treatment. And you know for an actual fact there would be no effort? Nothing provided by the government would suggest that or by the family. So you're asking us to vacate this sentence, and we would remand to the district court, and then following up on one of Judge Davis's questions, you get back to the district court. Of course, the district court is not confined to a sentencing guidelines. Correct. So I'm not sure that the district court here made an extremely meticulous, thorough record of the facts and of what she thought of the facts. It doesn't seem that there's much indication that she wouldn't exercise her discretion to give exactly the same sentence.  But if the guidelines reflect a 10-year lower guideline range, I would hope that that would have some impact on the judge to impose a lower sentence in this case. And the fact that he is now pled guilty to a state offense and would be sentenced for that offense at the time of the resentencing, that perhaps that would have some impact on the judge as well. Thank you very much. We'll ask our clerk to adjourn court.
judges: Diana Gribbon Motz, Albert Diaz, Andre M. Davis